IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

IN RE:  DANIEL E. LEWIS and                   CASE NO.: 4:20-bk-71735
        TAMI L. LEWIS, DEBTORS                CHAPTER 13

<u>**MEMORANDUM OPINION ON MOTION FOR SANCTIONS**</u>

Before the court are two pleadings: a *Motion for Sanctions Against Danny Jewell and Stephen Arnold* ("Motion") filed on August 31, 2021, at docket entry 81 by Daniel[1] and Tami Lewis, the debtors ("debtors"), and a *Response to Motion for Sanctions* ("Response") filed by Danny and Charlotte Jewell (the "Jewells") and Chandler Insurance Agency, Inc. ("Chandler Insurance") on September 14, 2021, at docket entry 85. The court heard the Motion and Response on November 3, 2021, and took the matter under advisement. For the reasons set forth below, the Motion is granted.

### I.  Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

### II.  Introduction

For approximately four years, the Jewells and the debtors were in business together; however, the relationship soured leading to state court litigation that predated this bankruptcy. The state court litigation resulted in a judgment adverse to the debtors in favor of: (1) the Jewells on the basis of a breach of contract and (2) Chandler Insurance on the basis of a fraudulent breach of

---

[1] The pleadings and exhibits in this case reference the debtor, Daniel Lewis, as both Daniel and Danny.

fiduciary duty. Thereafter, the debtors filed bankruptcy. The Jewells and Chandler Insurance then collectively filed their *First Amended Complaint Objecting to Discharge and Dischargeability of Debt* ("Complaint") in a related adversary proceeding before this court seeking to deny the debtors either their complete discharge or to determine the dischargeability of their specific debts based upon the adverse state court judgment.

This court heard the Complaint on the same date as it heard the Motion and Response. The disposition of the Complaint is the subject of a separate Memorandum Opinion of even date. Reference can be made to the Memorandum Opinion for a more expositive examination of the relationship between the parties and the conclusions drawn with respect to that relationship, the state court judgment, and the Complaint.

For purposes of this proceeding, it suffices that the debtors and the Jewells purchased Chandler Insurance in 2009, with the Jewells acquiring 51% and the debtors acquiring 49%. Daniel Lewis ("Lewis") was charged with the day-to-day operations as president. Danny Jewell ("Jewell") was to be a silent partner who, according to Lewis, may have played a more active role. Regardless, two events in 2013 precipitated a significant change in their business relationship: the first involved Jewell's discovery of potential unauthorized uses of Chandler Insurance funds; the second concerned unpaid withholding taxes.

The initial demand by the Internal Revenue Service ("IRS") was for approximately $42,000 representing both employee withholding (sometimes, trust fund taxes) and the employer's contribution (sometimes, non-trust fund taxes or excise taxes). Jewell, concerned about responsible party liability, immediately borrowed and deposited enough money into a Chandler Insurance account for the company to write a check to the IRS for $26,646.79. This amount represented outstanding trust fund taxes for which he and Lewis may have had personal liability.

2

Jewell expected Lewis to reimburse him and address the IRS demand; Lewis was unable to do so. To date, the balance of the initial IRS demand has not been paid and has increased significantly.

The resulting digression of the parties' relationship led to a Settlement Agreement in 2014 that severed most of their business connections and resulted in the debtors transferring all their stock in Chandler Insurance to the Jewells. Part of the settlement also involved the debtors signing a $20,000 promissory note to the Jewells. In unquantified parts, the note encompassed several factors or considerations, including the value of the debtors' Chandler Insurance stock transferred to the Jewells, the IRS debt, and other incidental obligations between the parties.

Thereafter, the debtors breached the Settlement Agreement by failing to pay the note; the Jewells filed suit to collect in Miller County, Arkansas. The debtors counterclaimed and brought in Chandler Insurance. A two-day jury trial resulted in a judgment adverse to the debtors for (1) breach of contract in favor of the Jewells concerning the $20,000 promissory note and (2) fraudulent breach of fiduciary duty in favor of Chandler Insurance. The latter addressed the unauthorized use of Chandler Insurance funds. Thereafter, the debtors filed their bankruptcy proceeding.

As stated above, the Jewells and Chandler Insurance collectively filed the Complaint seeking to determine dischargeability of debt or otherwise deny the debtors their discharge. While that matter was pending, Jewell took certain steps concerning the IRS indebtedness that resulted in the Motion. Stated succinctly, Jewell, acting as president of Chandler Insurance, filed proofs of claim on behalf of the IRS. Jewell apparently hoped that the IRS would receive some payment, as a priority creditor or otherwise, that might relieve Chandler Insurance of some or all of the outstanding tax indebtedness. It is this effort which offends and led the debtors to file their Motion.

The Response misrepresents or rewrites the state court judgment, which in no form or fashion addresses the IRS tax debt.  It conflates Jewell's claims with those of Chandler Insurance.  Furthermore, it advances a factual and legal basis for liability that unfavorably forms Jewell's entire justification for filing the proofs of claim on behalf of the IRS. Specifically,

> [A]s to [the debtors'] liability for the IRS deficiency, [the debtors] well know that the liability was litigated in the State Court case which resulted in a Judgment against [the debtors] for the tax debt in the form of the Promissory Notes.

(Response, Sept. 14, 2021, ECF No. 85, at 3.)  Stephen Arnold ("Arnold"), as Jewell's attorney, signed the Response.  Jewell and Arnold have apparently concluded that the debtors are now direct co-obligors with Chandler Insurance to the IRS for the tax indebtedness on which they otherwise have no liability because Jewell had to fund part of the Chandler Insurance tax obligation and thereafter the debtors signed a promissory note to the Jewells which partially, in an unquantified amount, included a settlement of the IRS debt as between the Jewells and the debtors.

### III.  Facts

In their Motion, the debtors contend that Jewell and Arnold should be sanctioned and ordered to pay attorney's fees for violating Federal Rule of Bankruptcy Procedure 9011(b)(2) and (b)(3) by filing a "secured proof of claim [claim 22-1] in the amount of $67,000.00, purportedly on behalf of the Internal Revenue Service."  (Motion, Aug. 31, 2021, ECF No. 81, at ¶ 2.)  The debtors maintain that Jewell *pro se*[2] filed an unauthorized and false proof of claim on behalf of the IRS, that the proof of claim failed to provide necessary evidentiary support, and was untimely filed.  The debtors also assert that Rule 9011 sanctions should apply to Jewell's counsel, Arnold,

---

[2] Though represented by his counsel, Arnold, at the hearing and in the adversary proceeding on the related Complaint, Jewell filed claim 22-1 *pro se*.

4

based on his "actions for actually filing [the proof of claim], promoting [claim 22-1], [and] arguing in support of [the claim] through the case[.]" (Trial Transcript, Nov. 3, 2021, ECF No. 102, at 27.)

*A. The Proof of Claim*

In support of their Motion, the debtors introduced the proof of claim, which is the subject of the Motion—claim 22-1. The claim was filed on March 8, 2021, and identifies the "current creditor" as the "Internal Revenue Service" but also lists "[o]ther names the creditor used with the debtor" as "Chandler Insurance Agency, Inc." (Debtors' Exhibit 1.) Part 1 of claim 22-1 provides the creditor's name and address for "notices and payments to [] be sent" as "Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346." (Debtors' Ex. 1.) The total claim amount including interest or other charges is $67,000.00. (Debtors' Ex. 1.) The claim's basis is listed as: "940, 941 taxes Chandler Insurance Agency, Inc., the Taxpayer, Debtor was President." (Debtors' Ex. 1.) The claim indicates that it is secured by an IRS lien on real property, specifically "Chandler Insurance real property." (Debtors' Ex. 1.) The value of the property securing the lien is listed as $200,000 with the secured portion of the lien totaling $67,000. (Debtors' Ex. 1.) No lien is attached to the claim. The claim lists a fixed "annual interest rate of 4.6%." (Debtors' Ex. 1.) Additionally, the claim reflects that it is entitled to priority status due to the nature of the debt being "[t]axes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8)." (Debtors' Ex. 1.) Jewell signed the claim as President of Chandler Insurance indicating that it was the "trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004." (Debtors' Ex. 1.) Jewell lists his email address as "dan[]." (Debtors' Ex. 1.)

Two documents are attached to the claim. The first document is correspondence from Marcus J. Johnson, a manager with the IRS, dated April 9, 2019, and mailed to Chandler Insurance in reference to an inquiry made by Jewell regarding "a payoff of your tax liability through

5

4/30/19."  (Debtors' Ex. 1.)  The "balance through [April 30, 2019] is $55,557.07."  (Debtors' Ex. 1.)  The letter does not indicate any personal liability for the debt; only Chandler Insurance is referenced.  The second document is a letter from Jewell to Mark Johnson, group manager with the IRS, dated February 28, 2019, regarding a "Copy of Request of Abatement of Penalties submitted 6/11/14 EIN 73-[]."  (Debtors' Ex. 1.)  The letter confirms a conversation between Jewell and Mr. Johnson regarding the previous submission of a request for abatement of penalties and noting Chandler Insurance's willingness to pay a negotiated amount.  (Debtors' Ex. 1.)

### B.  Second Proof of Claim

Over six months later, on September 23, 2021, Arnold, on behalf of Jewell, filed claim 23-1.  Like claim 22-1, the listed creditor is the "Internal Revenue Service."  (Debtors' Ex. 2.)  However, this claim does not reflect any "[o]ther names the creditor used with the debtor."  (Debtors' Ex. 2.)  The same name and address are provided for notices and payments.  Question 4 of Part 1 reflects that "this claim amend[s] one already filed," specifically claim 22.[3]  (Debtors' Ex. 2.)  Claim 23-1 provides a reduced claim amount (including interest or other charges) of "$55,557.07" with the basis of the claim as "940, 941 taxes plus penalties and interest (attached is 2013 Lien and 4/19/19 letter update."  (Debtors' Ex. 2.)  The claim states it is secured by a lien on real property as noted on a "Tax lien filed with Miller County 2013, copy attached."  (Debtors' Ex. 2.)  The claim recites the secured amount as $55,557.07 with an annual fixed interest rate of 3.0% with all or part of the claim being entitled to priority.  (Debtors' Ex. 2.)  Jewell signed the claim as President of Chandler Insurance noting that it was the "guarantor, surety, endorser, or

---

[3] Despite being designated as an "amended claim," the claim was not filed as an amended claim—claim 22-2.  Rather, the claim was filed as a new claim—claim 23-1.

other co-debtor.  Bankruptcy Rule 3005."  (Debtors' Ex. 2.)  Jewell lists his email address as "dan[]."  (Debtors' Ex. 2.)

Three documents are attached to claim 23-1.  The first document is a Notice of Federal Tax Lien reflecting serial number 969179813.  (Debtors' Ex. 2.)  The Notice lists the taxpayer as "Chandler Insurance Agency Inc a Corporation" with the kind of tax described as 940 and 941.  (Debtors' Ex. 2.)  The relevant "Tax Period[s]" reflected on the Notice extend from December 31, 2009 to December 31, 2012.  (Debtors' Ex. 2.)  The total "[u]npaid [b]alance of [a]ssessment" is $3677.69."  (Debtors' Ex. 2.)  The lien was filed with the Circuit Clerk and Recorder Miller County Texarkana, AR 71854 on November 26, 2013.  (Debtors' Ex. 2.)  The second document is a Notice of Federal Tax Lien reflecting serial number 969179713.  (Debtors' Ex. 2.)  The Notice lists "Chandler Insurance Agency Inc a Corporation" as the taxpayer with the kind of tax described as 941.  (Debtors' Ex. 2.)  The relevant "Tax Period[s]" reflected on the Notice extend from June 30, 2009 to September 30, 2012.  (Debtors' Ex. 2.)  The total "[u]npaid [b]alance of [a]ssessment" is "$61387.66."  (Debtors' Ex. 2.)  The lien was filed with the Circuit Clerk and Recorder, Miller County, Texarkana, AR 71854 on November 26, 2013.  (Debtors' Ex. 2.)  The third document is a copy of the correspondence forwarded by Marcus J. Johnson on April 9, 2019, which was also attached to claim 22-1.

### C.  Objection to Claim and Safe Harbor

On June 15, 2021, the debtors' counsel sent an email to Jewell at the email address listed on claim 22-1 and copied Arnold.  (Debtors' Ex. 3.)  The email informed Jewell that he "d[id] not have the authority to file a claim on behalf of the IRS and therefore, the claim is fraudulent."  (Debtors' Ex. 3.)  The email also set forth the criminal penalties associated with filing a fraudulent claim as referenced on page 3, part 3 of the claim.  (Debtors' Ex. 3.)  The email concluded with a

demand that Jewell withdraw the claim by "Friday, June 18, 2021." (Debtors' Ex. 3.) Immediately after sending the email, debtors' counsel received a return notice indicating that the email address listed by Jewell on the claim was incorrect. (Debtors' Ex. 4.) Debtors' counsel forwarded the returned email to Arnold on June 15, 2021. (Debtors' Ex. 4.)

On the same day, Arnold replied and acknowledged receipt of the emails forwarded by debtors' counsel. (Debtors' Ex. 5.) Arnold confirmed that Jewell was informed regarding the emails and asked debtors' counsel "to refrain from contacting [his] client directly especially since you know to contact me on his behalf." (Debtors' Ex. 5.)

On June 17, 2021, Arnold emailed debtors' counsel and stated "that the addition of the creditor IRS to Danny Lewis' bankruptcy was appropriate. You may want to consider the fact that Mr. Lewis has a duty to include all creditors in his bankruptcy and he failed to do that with the IRS." (Debtors' Ex. 6.) Arnold concluded his email by suggesting that the debtors "add the IRS to Schedule E rather than criticize Danny Jewell for bringing the IRS to [their] attention." (Debtors' Ex. 6.)

After exchanging emails with Arnold regarding the claim, debtors' counsel took two steps on July 9, 2021—he filed an *Objection to Claim* ("Objection") and forwarded a safe harbor letter to Arnold pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(1)(A). (Debtors' Exs. 7, 10.) The debtors objected to claim 22-1 on the basis that Jewell "does not work for the Internal Revenue Service, nor is he an authorized agent of the Internal Revenue Service; therefore, the claim [was] filed in violation of Federal Rule of Bankruptcy Procedure 3001(b)." (Debtors' Ex. 10, at ¶ 3.) The debtors also contend that the claim failed to include any attachments evidencing "the debtors' liability for any debt owed to the Internal Revenue Service[.]" (Debtors' Ex. 10, at ¶ 4.) The debtors further note that they served the IRS with other documents and pleadings in their case,

8

including the debtors' two proposed Chapter 13 plans filed on August 19, 2020, and December 3, 2020, at an address provided by the Chapter 13 Trustee's office, and the IRS did not respond. (Debtors' Ex. 10, at ¶ 4; Debtors' Exs. 12–13, 15–16.)  The Objection concludes with a prayer requesting the disallowance of Jewell's IRS claim.  (Debtors' Ex. 10, at ¶ 8.)  The debtors served their Objection on Jack W. Gooding, the Standing Chapter 13 Trustee, Jewell, and Arnold. (Debtors' Ex. 10.)  The debtors subsequently served their Objection on the IRS on September 21, 2021.  (Debtors' Ex. 11.)  The IRS did not file an independent claim as noted by the Trustee's *Summary Notice of Amended Claim Filed* nor did it respond to the Objection.  (Debtors' Ex. 14.)

The debtors' July 9, 2021 safe harbor letter demanded that claim 22-1 be withdrawn and attached a copy of the Motion that was ultimately filed and that is the subject of this opinion. (Debtors' Ex. 7.)  Arnold responded by emailing a letter to debtors' counsel on August 2, 2021. To support his contention that Jewell's claim was valid, Arnold cited "11 USC 501(b)."  (Debtors' Ex. 8.)

Jewell did not withdraw his claim, so the debtors filed their Motion.  The Motion states that Jewell filed a "secured proof of claim [claim 22-1] in the amount of $67,000, purportedly on behalf of the Internal Revenue Service."  (Debtors' Ex. 7.)  The debtors contend that the claim was "filed in violation of Federal Rule of Bankruptcy Procedure 3001(b), as Mr. Jewell is not authorized to file claims on behalf of the Internal Revenue Service."  (Debtors' Ex. 7.)  The Motion continues that "[t]he claim alleged that the debt owed was secured, and failed to provide evidence that any security interest had been perfected."  (Debtors' Ex. 7.)  The debtors also allege that the claim was "untimely filed thirty-five (35) days after the February 1, 2021, bar date for governmental claims" of which Jewell received notice on August 5, 2020.  (Debtors' Exs. 7, 12.)

Finally, and most significantly, the Motion asserts that Jewell "has provided no evidence that any debt is owed by the debtors [to the IRS] and therefore [Jewell] has knowingly and fraudulently presented a false claim against the estate of the debtors." (Debtors' Ex. 7.) The Motion details the parties' communications regarding the claim and the actions taken by the debtors prior to filing the Motion. (Debtors' Ex. 7.) Contrary to Arnold's argument interposing section 501(b), the debtors' Motion contends that Jewell can only rely on that section of the Bankruptcy Code "if in fact the debtors were liable on a tax debt with Mr. Jewell. To date, neither Mr. Arnold nor Mr. Jewell have provided any evidence of debtors' liability for any debt owed to the Internal Revenue Service." (Mot. at ¶ 8.) Thus, the debtors believe that sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 are warranted. In Response, Jewell argues as follows:

> [A]s to [the debtors'] liability for the IRS deficiency, [the debtors] well know that the liability was litigated in the State Court case which resulted in a Judgment against [the debtors] for the tax debt in the form of the Promissory Notes.

(Resp. at 3.)

### D. Hearing on the Motion

At the hearing, Arnold, on Jewell's behalf, further asserted that the debt referenced in the claim represents tax liability incurred by Chandler Insurance from 2009 to 2012 for which "the officers of a corporation are responsible." (Tr. Trans. at 29.) He argued that "it's clearly a debt of Mr. Lewis's" because "[h]e was president of [Chandler Insurance] at the time that these debts were incurred" and "[h]e's the one that failed to pay them[.]" (Tr. Trans. at 31-32.)

As proof of the amount due and owing to the IRS, Jewell introduced four packets of tax documents for Chandler Insurance at the hearing. The tax documents include the Employer's Quarterly Federal Tax Return[s] (noted as Form 941) and the Employer's Annual Federal Unemployment (FUTA) Tax Return[s] (noted as Form 940)—three Form 941s and one Form 940

for 2009 and four Form 941s and one Form 940 for 2010, 2011, and 2012.  (Pls.' Exs. 13-16.)

Jewell contends that the total tax debt of approximately $55,000 is based on Jewell's Exhibits 13,

14, 15, and 16 and includes interest and penalties since the tax has not been remitted.  (Tr. Trans.

at 43, 49, 53.)

As to Jewell's Exhibit 13, the packet contains three Form 941 quarterly federal tax returns

beginning with the second quarter and one Form 940 for 2009.  (Pls.' Ex. 13.)  The packet begins

with the second quarter because the Jewells and the debtors purchased Chandler Insurance in late

April 2009.  (Pls.' Ex. 13.)

| Quarterly Form | Part 1 Box 3 Income tax withheld from wages, tips, and other compensation | Part 1 Box 5d Total Social Security and Medicare taxes (Column 2, lines 5a + 5c = line 5d) | Part 1 Box 14 Balance Due |
|---|---|---|---|
| Second Quarter Form 941 for 2009 (dated June 3, 2013) | $406.08 | $1256.23 | $1662.31 |
| Third Quarter Form 941 for 2009 (dated May 31, 2013) | $815.00 | $2340.28 | $3155.28 |
| Fourth Quarter Form 941 for 2009 (dated June 3, 2013) | $632.00 | $1936.36 | $2568.36 |
| Total | $1853.08 | $5532.87 | $7385.95 |

(Pls.' Ex. 13.)  With regard to the 2009 Form 940 (Employer's Annual Federal Unemployment

(FUTA) Tax Return) dated June 3, 2013, the total FUTA tax listed is $170.07.  (Pls.' Ex. 13.)  All

Forms were completed and signed by Lewis as President of Chandler Insurance.  (Pls.' Ex. 13.)

As to Jewell's Exhibit 14, the packet contains four Form 941 quarterly federal tax returns

and one Form 940 for 2010.  (Pls.' Ex. 14.)

| Quarterly Form | Part 1 Box 3 Income tax withheld from wages, tips, and other compensation | Part 1 Box 5d Total Social Security and Medicare taxes (Column 2, lines 5a + 5c = line 5d) | Part 1 Box 14 Balance Due |
|---|---|---|---|
| First Quarter Form 941 for 2010 (dated June 3, 2013) | $688.00 | $1941.88 | $2629.88 |
| Second Quarter Form 941 for 2010 (dated June 3, 2013) | $1057.00 | $2700.14 | $3757.14 |
| Third Quarter Form 941 for 2010 (dated June 3, 2013) | $760.90 | $2289.00 | $3049.90 |
| Fourth Quarter Form 941 for 2010 (dated June 3, 2013) | $809.66 | $2476.45 | $3286.11 |
| Total | $3315.56 | $9407.47 | $12,723.03 |

(Pls.' Ex. 14.)  With regard to the 2010 Form 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return) dated June 3, 2013, the total FUTA tax listed is $223.62.  (Pls.' Ex. 14.)  All Forms were completed and signed by Lewis as President of the Chandler Insurance.  (Pls.' Ex. 14.)

As to Jewell's Exhibit 15, the packet contains four Form 941 quarterly federal tax returns and one Form 940 for 2011.  (Pls.' Ex. 15.)

| Quarterly Form | Part 1 Box 3 Income tax withheld from wages, tips, and other compensation | Part 1 Box 5d Total Social Security and Medicare taxes (Column 2, lines 5a + 5c = line 5d) | Part 1 Box 14 Balance Due |
|---|---|---|---|
| First Quarter Form 941 for 2011 (dated June 3, 2013) | $896.80 | $1890.20 | $2787.00 |
| Second Quarter Form 941 for 2011 (dated June 3, 2013) | $859.50 | $1937.81 | $2797.31 |
| Third Quarter Form 941 for 2011 (dated June 3, 2013) | $830.80 | $1873.70 | $2704.50 |
| Fourth Quarter Form 941 for 2011 (dated June 3, 2013) | $954.00 | $1885.40 | $2839.40 |
| Total | $3541.10 | $7587.11 | $11,128.21 |

(Pls.' Ex. 15.)  With regard to the 2011 Form 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return) dated June 3, 2013, the total FUTA tax listed is $212.86.  (Pls.' Ex. 15.)  All Forms were completed and signed by Lewis as President of Chandler Insurance.  (Pls.' Ex. 15.)

As to Jewell's Exhibit 16, the packet contains four Form 941 quarterly federal tax returns and one Form 940 for 2012.  (Pls.' Ex. 16.)

| Quarterly Form | Part 1 Box 3 Income tax withheld from wages, tips, and other compensation | Part 1 Box 5d Total Social Security and Medicare taxes (Column 2, lines 5a + 5c = line 5d) | Part 1 Box 14 Balance Due |
|---|---|---|---|
| First Quarter Form 941 for 2012 (dated June 3, 2013) | $1223.50 | $2175.82 | $3399.32 |
| Second Quarter Form 941 for 2012 (dated June 3, 2013) | $892.00 | $1752.01 | $2644.01 |
| Third Quarter Form 941 for 2012 (dated June 3, 2013) | $787.60 | $1798.10 | $2585.70 |
| Fourth Quarter Form 941 for 2012 (dated June 3, 2013) | $494.00 | $1467.48 | $1961.48 |
| Total | $3397.10 | $7193.41 | $10,590.51 |

(Pls.' Ex. 16.)  With regard to the 2012 Form 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return) dated June 3, 2013, the total FUTA tax listed is $171.44.  (Pls.' Ex. 16.)  All Forms were completed and signed by Lewis as President of Chandler Insurance.  (Pls.' Ex. 16.)

Based on Jewell's Exhibits 13-16, the total income tax withheld from wages, tips, and other compensation (Part 1 Box 3) for 2009 to 2012 was $12,106.84 as referenced on the Form 941s. The total Social Security and Medicare taxes (Part 1 Box 5d) for 2009 to 2012 was $29,720.86 as referenced on the Form 941s.  The total federal unemployment taxes owed for 2009 to 2012 was $777.99 as referenced on Form 940.  Thus, the total taxes due were $42,605.69.[4]

---

[4]  The total taxes due—$42,605.69—is calculated by adding the 2009 to 2012 income tax withheld from wages, tips, and other compensation ($12,106.84) plus the 2009 to 2012 Social Security and Medicare taxes ($29,720.86) plus the 2009 to 2012 federal unemployment taxes ($777.99).

| Year | Part 1 Box 3 (line 3) Income tax withheld from wages, tips, and other compensation | Part 1 Box 5d Total Social Security and Medicare taxes (Column 2, lines 5a + 5c = line 5d) | Part 1 Box 14 Balance Due |
|---|---|---|---|
| 2009 | $1853.08 | $5532.87 | $7385.95 |
| 2010 | $3315.56 | $9407.47 | $12,723.03 |
| 2011 | $3541.10 | $7587.11 | $11,128.21 |
| 2012 | $3397.10 | $7193.41 | $10,590.51 |
| Total | $12,106.84 | $29,720.86 | $41,827.70 |

Despite the introduction of these exhibits and the court's review of same, the record is unclear as to the nature of the tax debt referenced in claim 22-1 and the relative legal liability, if any, of the parties for that debt. Specifically, whether it is for employee withholdings collected by Chandler Insurance that were held in trust or employer obligations not paid by Chandler Insurance. (Tr. Trans. at 52.)

In explaining the nature of the tax debt referenced in claim 22-1, Jewell took inconsistent positions. He initially, through his counsel, told the court that the debt represented "completely excise taxes" representing the "employer's contribution." (Tr. Trans. at 37.) Subsequently, Jewell asserted that the tax debt represented both employee withholding and the employer's obligation. (Tr. Trans. at 47.) Regardless of the nature, Jewell expressed confidence that the responsible party doctrine formulated by the IRS applied to the debt despite the fact that neither Jewell nor the debtors had been personally assessed liability for the debt by the IRS. (Tr. Trans. at 37, 40, 47.) In response, the debtors argued that the tax liability is exclusively excise taxes (employer withholding taxes) owed by Chandler Insurance to which the responsible party doctrine does not apply. (Tr. Trans. at 38.)

The debtors also introduced a copy of a check dated April 4, 2014, in the sum of $26,646.79 representing payment to the IRS from Chandler Insurance.  (Debtors' Ex. 17.)  The memo line on the check notes "73-[] Trust Fund Balance 2009 thru 2012."  (Debtors' Ex. 17.)  Both parties agreed that the check represented payment of employee withholding taxes owed by Chandler Insurance from 2009 to 2012, which were presumably included as part of the taxes owed and listed on Jewell's Exhibits 13-16.  That amount may represent withholding for which Jewell and Lewis may have been liable as responsible parties.  However, neither the debtors nor Jewell could state with specificity how that payment related to a reduction of Chandler Insurance's tax obligation.

## IV.  Analysis

The debtors contend that Jewell should be sanctioned pursuant to Federal Rule of Bankruptcy Procedure 9011(b)(2) and (b)(3) for filing a "secured proof of claim [claim 22-1] in the amount of $67,000, purportedly on behalf of the [IRS]," in violation of the United States Bankruptcy Code.  (Mot. at ¶ 2.)  The debtors also assert that Rule 9011 sanctions should apply to Arnold based on his "actions for actually filing [the proof of claim], promoting [claim 22-1], [and] arguing in support of [the claim] through the case[.]"  (Tr. Trans. at 27.)

Federal Rule of Bankruptcy Procedure "9011 governs allegations and representations made in bankruptcy court.  The language of Rule 9011 is almost identical to Fed. R. Civ. P. 11, and case law interpreting Rule 11 applies to Rule 9011 cases."  *Young v. Young, Cruz* (*In re Young*), 789 F.3d. 872, 879 (8th Cir. 2015) (citing *Grunewaldt v. Mut. Life Ins. Co.* (*In re Coones Ranch, Inc.*), 7 F.3d 740, 742 n. 4 (8th Cir. 1993)).  Specifically, Rule 9011(b) provides:

> (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

16

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

FED. R. BANKR. P. 9011(b)(2), (3) (2021). "The duty imposed by Rule 9011 requires an attorney to 'stop, think and investigate more carefully before . . . filing papers' with the court or making assertions in those papers." *Young*, 789 F.3d at 880 (citation omitted). Furthermore, "[t]he 'pure-heart-and-empty-head' defense is not available to anyone faced with Rule 9011 sanctions." *Id.* at 881 (citation omitted). "The potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules is enormous." *In re Armstrong*, 487 B.R. 764, 774 (Bankr. E.D. Tex. 2012). Although some courts tend toward leniency, the standards set forth in Rule 9011 apply equally to *pro se* litigants. *In re Jones*, 632 B.R. 138, 147 (Bankr. S.D. Ohio 2021); *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 544-55 (1991) (explaining that Rule 11 applies both to parties who are represented by counsel and to *pro se* parties as well). If an attorney or *pro se* party violates Rule 9011(b), the court may sanction the party or attorney in a nature "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. BANKR. P. 9011(c)(2) (2021). Sanctions can include monetary and nonmonetary awards. *Id.* However, "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)." FED. R. BANKR. P. 9011(c)(2)(A). Furthermore, "the court may award to the party prevailing on [a motion for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." FED. R. BANKR. P. 9011(c)(1)(A).

The obligations imposed by Federal Rule of Bankruptcy Procedure 9011 extend to "proofs of claim filed in bankruptcy cases." *In re Dansereau*, 274 B.R. 686, 688 (Bankr. W.D. Texas 2002) (citations omitted). "The standard used to determine whether a party made a reasonable inquiry before filing a claim is the reasonableness of its conduct under the circumstances." *Id.* at 689 (citation omitted). In *Dansereau*, the court considered whether sanctions should apply to a creditor who repeatedly filed priority claims without making a "reasonable inquiry into the status of its claims before it filed them" despite instructions on the Official Form describing how to complete the form. *Id.* The court found that the creditor's failure to inquire before filing the claim was sufficient to warrant sanctions. *Id.* The court additionally cited to other bankruptcy cases where Rule 9011 sanctions were imposed against taxing agencies—the Oregon Department of Revenue and the IRS—for failure to make a reasonable inquiry prior to filing a claim for taxes that were not owed. *Id.* at 688–89; *see In re McAllister*, 123 B.R. 393 (Bankr. D. Or. 1991); *Hamilton v. United States* (*In re Hamilton*), 104 B.R. 525 (Bankr. M.D. Ga. 1989).

## A. Jewell

Despite being represented by Arnold via correspondence with the debtors' counsel prior to and after the filing of the Motion, at the hearing on the debtors' Motion, and during a related adversary proceeding, Jewell filed claim 22-1 *pro se*. Thus, any analysis must parse between Jewell's actions and Arnold's actions in ruling on the debtors' Motion. The court must determine whether Jewell asserts legal contentions warranted by existing law in filing the proof of claim and whether the basis for that claim has evidentiary support.

Jewell contends that claim 22-1, a secured proof of claim filed on behalf of the IRS, represents a tax debt owed by Chandler Insurance for which Lewis, the former President of Chandler Insurance, is a responsible party under section 6672 of the Tax Code. If so, Jewell argues

18

that 11 U.S.C. § 501(b) permits the filing of a claim in this circumstance when a creditor fails to file a claim for which joint liability lies.  The debtors assert that no "proper basis for the claim" lies under 11 U.S.C. § 501(b) because the debtors do not have any liability on the claim and the "elements set forth within Bankruptcy Rule 9011 have been met."  (Tr. Trans. at 26.)  Thus, the question becomes whether the debtors were jointly liable with Chandler Insurance for the tax debt listed in claim 22-1 that was filed by Jewell on behalf of the IRS pursuant to 11 U.S.C. § 501(b).

Claim 22-1 lists the creditor as the IRS.  (Debtors' Ex. 1.)  However, the claim also denotes Chandler Insurance as another name used by the creditor.  (Debtors' Ex. 1.)  Despite no documentation evidencing a lien, the claim reflects that it is secured by an IRS lien on real property, specifically "Chandler Insurance real property."  (Debtors' Ex. 1.)  The claim reflects the designation of priority status due to the debt being in the nature of "[t]axes or penalties owed to governmental units.  11 U.S.C. § 507(a)(8)."  (Debtors' Ex.1.)  Jewell signed the claim as President of Chandler Insurance.  (Debtors' Ex. 1.)  The stated basis for the $67,000 debt evidenced by the claim is "940, 941 taxes Chandler Insurance Agency, Inc., the Taxpayer, Debtor was President." (Debtors' Ex. 1.)

On September 23, 2021, Jewell's counsel, Arnold, filed claim 23-1.  The only logical inference drawn from Arnold filing claim 23-1 is that Jewell or Arnold recognized inconsistencies and deficiencies in the original claim—claim 22-1.  Claim 23-1 lists the creditor solely as the IRS. (Debtors' Ex. 2.)  Claim 23-1 also reflects a reduced total debt amount of "$55,557.07" with the basis of the claim as "940, 941 taxes plus penalties and interest (attached is 2013 Lien and 4/19/19 letter update." (Debtors' Ex. 2.)  The claim is secured by a lien on real property as noted on a "Tax lien with Miller County 2013, copy attached."  (Debtors' Ex. 2.)  As noted on the claim, Jewell

19

attached two documents evidencing liens filed by the IRS in Miller County, Arkansas on November 26, 2013.  (Debtors' Ex. 2.)

Despite the filing of claim 23-1, Jewell failed to substantiate what the tax debt listed in claim 22-1 represented and what portion, if any, remained due and owing to the IRS.  Further, and more significantly, Jewell failed to introduce any evidence demonstrating the debtors' liability on the debt.  The Notices of Federal Tax Lien only list "Chandler Insurance Agency Inc a Corporation" as the taxpayer.  The liens do not reference the debtors or Jewell.  The IRS has never made a claim against the Jewells or the debtors for this amount.  Notwithstanding the lack of clarity regarding the nature of the tax debt and only referencing the taxpayer as "Chandler Insurance Inc a Corporation," Jewell filed claim 22-1 asserting a tax debt owed by the debtors to the IRS.  This assertion is completely without legal or evidentiary support.

Jewell and Arnold were presented with an opportunity to withdraw the claim.  Federal Rule of Bankruptcy Procedure 9011(c)(1)(A) states that a "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion, . . . the challenged . . . claim . . . is not withdrawn or appropriately corrected[.]"  FED. R. BANK. P. 9011(c)(1)(A).  The debtors' counsel forwarded a safe harbor letter to Arnold on July 9, 2021.  (Debtors' Ex. 7).  Arnold's emailed letter to debtors' counsel on August 2, 2021, citing 11 U.S.C. § 501(b) as a basis for the claim, does not defeat the debtors' Motion because it did not withdraw or appropriately correct claim 22-1.  Additionally, claim 23-1—filed as a new claim or an amendment of claim 22-1—fails to negate the debtors' Motion as claim 23-1 was filed well after the safe harbor window provided in the debtors' July 9, 2021 letter, and thus, has no effect.  Further, the second claim does not negate the core problem—i.e., Jewell incorrectly asserting co-debtor status.

In support of his contention that claim 22-1 was warranted by existing law and had sufficient evidentiary support, Jewell introduced Exhibits 13-16, representing the tax liability incurred by Chandler Insurance from 2009 to 2012 for which "the officers of a corporation are responsible" and that Lewis failed to remit to the IRS as President of Chandler Insurance.  (Tr. Trans. at 29.)  These exhibits are copies of the quarterly Form 941s and 940s signed by Lewis as President of Chandler Insurance and submitted to the IRS.  (Pls.' Exs. 13-16.)  Form 941s are the employer's quarterly federal tax returns whereas Form 940s are the employer's annual federal unemployment tax returns or FUTA.  The total taxes due—$42,605.69—is calculated by adding the 2009 to 2012 income tax withheld from wages, tips, and other compensation ($12,106.84) plus the 2009 to 2012 Social Security and Medicare taxes ($29,720.86) plus the 2009 to 2012 federal unemployment taxes ($777.99).

Notwithstanding the introduction of these exhibits, the record is unclear as to the nature of the tax debt—employee withholdings collected by Chandler Insurance that were held in trust or employer obligations not paid by Chandler Insurance—and the relative obligation, if any, of the parties for that debt.  (Tr. Trans. at 52.)  Jewell initially argued that the debt solely represented "excise taxes" but later stated that they were both employee withholding and excise tax to which the responsible party doctrine applied apportioning liability to Lewis.  (Tr. Trans. at 37, 47.)  Contrary to Jewell's assertions, the debtors argued that the tax liability was exclusively excise taxes owed by Chandler Insurance to which the responsible party doctrine did not apply.  (Tr. Trans. at 38.)  The IRS has not personally assessed Lewis or the debtors for this debt.  (Tr. Trans. at 37, 40.)  Thus, the court must now turn to the tax documents to discern whether the debtors are jointly liable with Chandler Insurance on the tax debt asserted in claim 22-1.

Employers utilize Form 941 to report income taxes, Social Security tax, and Medicare tax withheld from employee paychecks and to pay the employer's portion of Social Security or Medicare taxes. Taxes withheld from an employee's wages or salaries are called "trust fund taxes and [they] must be paid to the Internal Revenue Service[.]" I.R.S. Pub. No. 784, Cat. No. 63994X (June 2016). "If trust fund taxes are not collected, or not truthfully accounted for, or not paid, or are evaded or defeated in any way, [the IRS] may impose a trust fund recovery penalty." *Id.* Further, "[a]ny person responsible for collecting, accounting for, and paying trust fund taxes, and who acted willfully in not performing one or more of those responsibilities, can be liable for the trust fund recovery penalty. The IRS can collect the penalty from any responsible person or persons who acted willfully if the IRS can't immediately collect the taxes from the employer or business." *Id.* "Any person who had responsibility for certain aspects of the business and financial affairs of the employer (or business) may be a responsible person. A responsible person may be an officer or employee of a corporation, or a partner or employee of a partnership." *Id.* "Responsible persons may include those who direct or have authority to direct the spending of business funds." *Id.* "The non-trust fund portion of these taxes is the amount of Social Security and Medicare taxes the employer is responsible, in most instances, to match and pay to the government." I.R.M. § 5.19.14.3.2 (Aug. 3, 2018). "No corresponding personal liability attaches for non-trust fund taxes[.]" *DuCharmes & Co., Inc. v. Michigan* (*In re DuCharmes & Co., Inc.*), 852 F.2d 194, 196 (6th Cir. 1988).

To calculate those portions of the taxes that represent trust fund taxes, an entity would take its Form 941, reference the amount contained on line 3 (which represents the total income tax withheld for the quarter), reference the amount contained on line 5d (which represents the total Social Security and Medicare tax), add the full amount from line 3 and one half of the amount

22

from line 5d.  I.R.M. § 5.19.14.3.2 (Aug. 3, 2018).  Those two figures added together equal the

total trust fund tax.  The non-trust fund tax is one half of the amount referenced on line 5d.  *Id.*

| Year | Part 1 Box 3 (line 3) Income tax withheld from wages, tips, and other compensation | Part 1 Box 5d Total Social Security and Medicare taxes (Column 2, lines 5a + 5c = line 5d) | Part 1 Box 14 Balance Due |
|---|---|---|---|
| 2009 | $1853.08 | $5532.87 | $7385.95 |
| 2010 | $3315.56 | $9407.47 | $12,723.03 |
| 2011 | $3541.10 | $7587.11 | $11,128.21 |
| 2012 | $3397.10 | $7193.41 | $10,590.51 |
| Total | $12,106.84 | $29,720.86 | $41,827.70 |

Taking the information provided in Jewell's Exhibits 13-16 and applying the formula provided by

the IRS, the court can easily calculate the trust fund tax portion to which the responsible party

doctrine applies and the non-trust fund tax portion to which the responsible party doctrine does not

apply.  Trust fund tax: Line 3 ($12,106.84) plus half of line 5d ($29,720.86 x 0.5=$14,860.43)

equals $26,967.27.  Non-trust fund tax: half of line 5d is $14,860.43.

Thus, utilizing the Form 941s introduced as Jewell's Exhibits 13-16, the total employer's

quarterly federal taxes owed by Chandler Insurance for the term of April 2009 to December 2012

was  $41,827.70,  which  included  $26,967.27  in  trust  fund  taxes  (taxes  withheld  from  the

employees' wages or salaries) and $14,860.43 in non-trust fund taxes (representing the employer's

portion of Social Security or Medicare tax owed).  Only the $26,967.27 trust fund tax portion is

subject to the trust fund tax penalty to which the responsible party doctrine applies.  This amount

appears to be consistent with the check written by Jewell to the IRS on behalf of Chandler

Insurance on April 4, 2014, in the sum of $26,646.79 representing "73-[] Trust Fund Balance 2009

thru 2012."  (Debtors' Ex. 17.)  Based on the evidence introduced at the hearing, the trust fund tax

portion of Chandler Insurance's debt was paid in 2014.  The remaining portion of the Form 941

23

taxes represented non-trust fund taxes for which Chandler Insurance, not the individual owners or officers, are liable. The debtors are not responsible parties for the tax debt owed by Chandler Insurance, which is the basis for claim 22-1. Since the debtors have no joint liability on the tax debt of Chandler Insurance, section 501(b) of the Bankruptcy Code, as argued by Jewell, does not permit the filing of claim 22-1.

Specifically, 11 U.S.C. § 501(b) provides, "[i]f a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim." 11 U.S.C. § 501(b) (2021). In conjunction with § 501(b), Federal Rule of Bankruptcy Procedure 3005(a) "makes clear that any entity that may be liable on a debt of the debtor is authorized to file in the name of the creditor." 4 COLLIER ON BANKRUPTCY ¶ 501.03[1] (16th ed. 2019). "Although not expressly required by Rule 3005, a codebtor filing under that rule should include sufficient information to establish a right to file and execute the proof of claim." *Id.* Plainly stated, the debtors are not jointly liable on the Chandler Insurance tax debt to the IRS; thus, without joint liability, Jewell, acting on behalf of Chandler Insurance, does not have authority to file a claim.

The cumulative evidence introduced at trial reflects that claim 22-1, filed on behalf of the IRS by Jewell as President of Chandler Insurance, is not warranted by existing law as the debtors have no liability on the $67,000 tax debt, which represents non-trust fund taxes owed solely by Chandler Insurance to which penalties and interests have presumably applied. Jewell is not liable for the debt. The debtors are not. Only Chandler Insurance is, and it enjoys no co-debtor relationship with the debtors or the Jewells to the IRS. Thus, Chandler Insurance, through Jewell, had no authority and no basis to file a claim pursuant to 11 U.S.C. § 501(b) as a co-debtor. The allegations and other factual contentions contained in claim 22-1 lack evidentiary support. Based

24

on Jewell's presentation of a pleading not warranted by existing law and lacking evidentiary support for which a reasonable inquiry was not made, the court grants the debtors' Motion and hereby awards sanctions against Jewell pursuant to Federal Rule of Bankruptcy Procedure 9011(b) in the sum of $500.00.

### B. Arnold

The debtors also argued that Jewell's counsel, Arnold, should be sanctioned pursuant to Rule 9011 for his "actions for actually filing [the proof of claim], promoting [claim 22-1], [and] arguing in support of [the claim] through the case[.]" (Tr. Trans. at 27.) The evidence introduced at trial established that Jewell alone signed and filed claim 22-1; thus, Arnold cannot be held responsible for the filing of the claim. However, the evidence also demonstrates that Arnold actively advocated the validity of Jewell's position prior to the hearing in correspondence with the debtors' counsel, filed a responsive pleading to the Motion, filed claim 23-1, and appeared and argued on Jewell's behalf at the hearing. In analyzing Arnold's advocacy of claim 22-1 in light of Rule 9011(b), the court is compelled to find that sanctions lie.

"Under Rule 9011(b)(3), bankruptcy courts have the authority to sanction attorneys who present (sign, file, submit, or *later advocate*) a pleading that is frivolous." *In re Schivo*, 462 B.R. 765, 777 (Bankr. D. Nev. 2011) (emphasis added) (citation omitted). "The word 'frivolous,' when used in connection with sanctions denotes a filing that is both baseless—lacks factual foundation— and made without reasonable competent inquiry." *Id.* (citation omitted). "Under this standard, '[a]n attorney has a duty to conduct a reasonable factual investigation as well as to perform adequate legal research that confirms that his position is warranted by existing law[.]" *Id.* (citation omitted). "Thus, a finding that there was no reasonable inquiry into either the facts or the law is tantamount to a finding of frivolousness." *Id.* (citation omitted).

Jewell apparently takes the position that somehow the debtors are by law codebtors with Chandler Insurance to the IRS for the Chandler Insurance employer tax obligation because Jewell borrowed money to fund the Chandler Insurance check for $26,646.79, and ultimately the debtors executed a $20,000 promissory note to the Jewells as part of their Settlement Agreement, the consideration of which partially included the IRS debt (other parts being miscellaneous monies owed and, significantly, the value of the debtors' Chandler Insurance stock transferred to the Jewells). That is a bridge too far on a path too crooked. That tenuous factual basis and concomitant legal conclusion do not reasonably, under any circumstances, justify Jewell filing or Arnold promoting the proof of claim.

Based on the record previously discussed, Arnold clearly failed to reasonably inquire into the nature of the tax debt that forms the basis for claim 22-1 prior to advocating by email, in the Response, and at the hearing that 11 U.S.C. § 501(b) permitted the filing of the claim. If unfamiliar with tax law, he should have examined the facts and researched the law. A brief search on the IRS's website or case law would have quickly familiarized Arnold with the various bases for tax liability and the respective portions for which the responsible party doctrine would apply and render the debtors liable for the outstanding tax liability. Arnold's failure to "conduct a reasonable factual investigation [and] perform adequate legal research" into the nature of the claim and respective obligations, if any, of the parties prior to advocating a claim based on section 501(b) "is tantamount to a finding of frivolousness." *Schivo*, 462 B.R. at 777. Arnold's assertion in the Response, which he drafted and signed, that the judgment on a promissory note from the debtors to the Jewells settling their accounts elevated the debtors to a co-debtor status with Chandler Insurance to the IRS is the definition of unwarranted facts supporting a frivolous claim. Thus, the

court grants the debtors' Motion and hereby awards sanctions against Arnold pursuant to Federal Rule of Bankruptcy Procedure 9011(b) in the sum of $1500.00.

### C.  Attorney's Fees

In their Motion, the debtors also request that attorney's fees be awarded "in connection with this Motion and the Objection to Claim filed[.]"  (Mot. at 4.)  Federal Rule of Bankruptcy Procedure 9011(c)(1)(A) provides an award "to the party prevailing on [a motion for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."  FED. R. BANKR. P. 9011(c)(1)(A).  In this instance, Jewell filed claim 22-1 on behalf of the IRS for a tax debt upon which the debtors have no personal liability; thus, section 501(b) of the Bankruptcy Code does not operate as an avenue for claiming co-debtor status with the debtors.  Plainly, claim 22-1 is not warranted by existing law and lacked evidentiary support.  As the prevailing party, the debtors are entitled to an award of reasonable attorney's fees and costs associated with the filing of the Motion and the pursuit thereof.  As such, fees are warranted, and the debtors are awarded reasonable expenses and attorney's fees in the sum of $1500 against Jewell.

### V.  Conclusion

Based on the reasons set forth above, the debtors' Motion is granted.  Sanctions are awarded against Jewell in the sum of $500.00 and Arnold in the sum of $1500.00.  Furthermore, fees are warranted, and the debtors are awarded reasonable expenses and attorney's fees in the sum of $1500 against Jewell.  Pursuant to Federal Rule of Bankruptcy Procedure 7054, the court will enter a separate judgment to this effect.

IT IS SO ORDERED.

Dated this 4th day of February, 2022.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Daniel and Tami Lewis
  Danny Jewell
  Marc Honey
  Stephen T. Arnold